

DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Daniel Turinsky
daniel.turinsky@dlapiper.com
T  212.335.4566
F  917.778.8631

March 31, 2017

**VIA ECF**

The Honorable Edgardo Ramos
United States District Court, Southern of New York
40 Foley Square
New York, NY 10007

**Re:   John Macias v. Barrier Free Living, Inc. (Civil Action No. 16-cv-01735-ER)**

Dear Judge Ramos:

     We represent Defendant Barrier Free Living, Inc. ("BFL" or the "Company") in the above-referenced matter. We write to request a pre-motion conference in connection with BFL's anticipated motion for summary judgment seeking dismissal of the Complaint filed by Plaintiff John Macias ("Plaintiff" or "Macias").

     Plaintiff, a former employee of BFL, alleges that he was discriminated against based on his gender (male), subjected to a hostile work environment, and terminated in retaliation for complaints of such treatment, in violation of Title VII of the Civil Rights Act of 1964 and the New York State and City Human Rights Laws.  His claims lack merit and should be dismissed.

     BFL terminated Plaintiff's employment for legitimate, non-discriminatory and non-retaliatory reasons after it discovered that Plaintiff had violated Company policy by engaging in an inappropriate personal relationship with a resident of the facility where he worked. Specifically, Plaintiff was employed as the Facilities Manager for Freedom House, an emergency shelter for disabled victims of domestic violence.  Given the vulnerable population that Freedom House serves, BFL has a policy that strictly prohibits employees from having any personal relationship with residents. The policy is communicated to employees in the BFL Handbook (which Plaintiff received) and at orientation.

     In June 2013, a resident of Freedom House (Resident A) made a report that Plaintiff and another resident (Resident B) were having an intimate relationship. BFL immediately investigated the complaint, but both Resident B and Plaintiff denied any personal relationship, and BFL was unable to uncover any evidence to substantiate a policy violation. Accordingly, BFL reminded Plaintiff of the Company policy against personal relationships with residents and took no further action at that time.

     Thereafter, BFL received complaints about Plaintiff's defensive nature, communication, and failure to appropriately handle maintenance issues.  On August 12, 2014, Plaintiff sent an email to his supervisor requesting a meeting because: "I feel that I am being picked on and



The Honorable Edgardo Ramos
March 31, 2017
Page 2

harassed by some staff members and management, there is a constant finger pointing and false allegations towards me and my staff members. It has become a very unhealthy work environment." Two days later, BFL's CEO and HR Manager, as well as Plaintiff's supervisor, met with Plaintiff. During the meeting, Plaintiff expressed that he felt overwhelmed by his job, felt "picked on" about the maintenance problems at Freedom House, and felt personally attacked when people came with complaints about the facilities. Plaintiff also complained that individuals were still gossiping about his alleged relationship with the former resident. BFL urged Plaintiff to try to ignore the gossip, and Plaintiff admitted that the rumors stopped after the meeting.

One month later, in September 2014, BFL received a voicemail from Resident A in which she complained that BFL "was doing nothing" to investigate the relationship between Plaintiff and Resident B. Resident A claimed that the relationship was on-going, threatened to "go on TV," and suggested that BFL check Plaintiff's phone records. BFL undertook a review of the call records from Plaintiff's work cell phone. The records revealed that Plaintiff and Resident B exchanged 168 calls between May and June 2013 (when Resident B was a resident at BFL). The records reflect that calls took place at all times, including on weekends, evenings and holidays. One call lasted approximately 28 minutes. Based upon the frequency and timing of the calls, BFL concluded that the calls were unrelated to Plaintiff's job duties and that there was an inappropriate relationship between Plaintiff and Resident B. Indeed, Plaintiff admitted that there is no need for a resident to have his cell number and that many of the calls were not work-related. Based on its review of the call logs, BFL also concluded that Plaintiff was dishonest during its earlier investigation, when he denied having any inappropriate relationship with Resident B. BFL made the decision to terminate Plaintiff based on his violation of its workplace relationships policy, and his dishonesty, and subsequently replaced him with a male employee.

The record is devoid of any evidence that BFL was motivated by Plaintiff's gender in making the termination decision. The decision to terminate Plaintiff was made by BFL's CEO, who is also a male, and Plaintiff was replaced by a male. These facts significantly undermine any claim of sex-based discrimination. See Inguanzo v. Hous. & Servs., Inc., 2014 WL 4678254, at *19 (S.D.N.Y. Sept. 19, 2014). Moreover, BFL had a legitimate, non-discriminatory reason for terminating Macias, namely his clear violation of Company policy by engaging in an inappropriate relationship with Resident B. Additionally, Plaintiff also was dishonest during the course of the Company's June 2013 investigation when he denied having a personal relationship with a resident of Freedom House.

Plaintiff's hostile work environment claim similarly fails. In support of this allegation, Plaintiff points to an isolated comment about his appearance, but admits that he never raised such comment with management. He also argues that he was subjected to harsh treatment by his first supervisor at Freedom House; however, the record reflects that this supervisor subjected both men and women to the same treatment. Thus, it cannot be said that this treatment was due to



The Honorable Edgardo Ramos
March 31, 2017
Page 3

Plaintiff's sex. See <u>Marshall v. N.Y.C. Bd. of Elections</u>, 322 Fed. Appx. 17, 18-19 (2d Cir. 2009) (affirming summary judgment dismissing hostile work environment claim because although plaintiff's "allegations that her supervisor displayed a violent temper, stood over her with clenched fists on several occasions, disparaged her educational background, and engaged in crass behavior are troubling," Title VII "prohibits only harassment that is discriminatory"). Plaintiff also points to questions from his co-workers about whether he was having a relationship with a resident. Plaintiff admitted, however, that when he spoke with his manager, Human Resources, and the CEO about the rumors (which plainly do not constitute a hostile work environment), they called a meeting with all Freedom House staff and the rumors stopped.

Lastly, there is no evidence that Plaintiff's termination was in retaliation for any protected activity. First, Plaintiff did not engage in any protected activity. While Plaintiff may have complained about general workplace frustrations, such complaints – unrelated to any protected trait – do not constitute protected activity and cannot support a retaliation claim. See <u>Fattoruso v. Hilton Grand Vacations Co.</u>, 525 Fed. App'x 26 (2d Cir. 2013). Even if Plaintiff's August 12, 2014 email is considered protected activity, there is no causal connection between such email and his termination on September 30, 2014. It was not until late September 2014 that BFL received a second complaint about Plaintiff's relationship with Resident B and discovered 168 phone calls between them. Courts routinely hold that intervening complaints and policy violations break a causal connection that is based on timing alone. See <u>Joseph v. Marco Polo Network, Inc.</u>, 2010 WL 4513298, *18 (S.D.N.Y. 2010).

In any event, BFL had a legitimate, non-retaliatory reason for Plaintiff's termination—his violation of Company policy by engaging in an inappropriate relationship with Resident B. Plaintiff does not deny exchanging 168 calls with Resident B, and further admitted at his deposition that his relationship with Resident B was inappropriate. Plaintiff cannot show that BFL's legitimate reason for his termination was a pretext for discrimination or retaliation. See <u>El Sayed v. Hilton Hotels Corp.</u>, 627 F.3d 931 (2d Cir. 2010) (granting summary judgment dismissing retaliation claim where plaintiff failed to present any evidence of pretext).

In light of the foregoing, BFL respectfully requests a pre-motion conference in advance of its motion for summary judgment.

Respectfully submitted,

**DLA Piper LLP (US)**

Daniel Turinsky

cc: John C. Luke, Jr., Esq., Attorney for Plaintiff (via ECF)